**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MIRIAM D. SANTA MARIA, | No. CV-08-8006-PCT-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

    Pending before the Court are the Motion for Summary Judgment of Plaintiff Miriam D. Santa Maria (Dkt. # 14) and the Cross-Motion for Summary Judgment of Defendant Michael J. Astrue, Commissioner of Social Security (Dkt. # 17). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's cross-motion.

**BACKGROUND**

    On November 18, 2004, Plaintiff applied for disability insurance benefits, alleging a disability onset date of January 27, 1995. (R. at 70.) Plaintiff alleged that she became disabled because of accidents she suffered in 1990 and 1993, which injured her right hand and wrist. (*See* R. at 19.) Plaintiff's date last insured ("DLI") for disability insurance benefits was December 31, 2000. (R. at 67.) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 63; R. at 58.)

Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 57.) The ALJ convened a hearing on the matter on February 15, 2007, at which time the ALJ heard testimony from Plaintiff, a vocational expert, and Dr. Russo (a medical expert). (R. at 307-43.) In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520 (2003).[1] (R. at 16-22.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity. (R. at 18.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "numbness in right wrist and hands." (*Id.*) At step three, the ALJ determined that these impairments, either alone or in combination, did not meet or equal any of the Social Security Administration's listed impairments. (*Id.*)

At step four, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC"),[2] concluding that Plaintiff could perform a range of light work. (*Id.*) The ALJ thus

---

[1]Under that test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2]RFC is the most a claimant can do despite the limitations caused by his impairments. *See* SSR 96-8p (July 2, 1996).

1 determined that Plaintiff did not retain the RFC to perform her past relevant work as a police
2 officer and an assembler. (R. at 21.) The ALJ therefore reached step five, determining that
3 Plaintiff could perform a significant number of other jobs in the national economy that met
4 her RFC limitations. (R. at 22.) Specifically, the ALJ concluded that Plaintiff could work
5 in the unskilled occupations of hostess, cashier with a sit/stand option using the left hand, and
6 parking lot booth attendant. (*Id.*) Therefore, the ALJ concluded that Plaintiff was not
7 disabled. (*Id.*)

8 The Appeals Council declined to review the decision, and provided reasons for
9 refusing to do so.[3] (R. at 5-9.) Plaintiff filed the complaint underlying this action on January
10 15, 2008, seeking this Court's review of the ALJ's denial of benefits.[4] (Dkt. # 1.) Plaintiff
11 filed her Motion for Summary Judgment on July 11, 2008. (Dkt. # 14.) Defendant filed his
12 Cross-Motion for Summary Judgment on August 7, 2008. (Dkt. # 17.)

## DISCUSSION

**I.     Standard of Review**

15 A reviewing federal court will only address the issues raised by the claimant in the
16 appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

---

[3] Plaintiff attaches great significance to the fact that the Appeals Council explained its reasons for declining review. Plaintiff states that the Appeals Council "attempted to 'fix' the [ALJ's] Decision" by giving "additional rationale to the insufficient rationale from the ALJ," which Plaintiff argues "is ineffective." (Dkt. # 16 at 6, 11.) The Court is not entirely certain what Plaintiff means to argue, for the Appeals Council was *not* reviewing the ALJ's decision to provide additional rationale. The Appeals Council explicitly stated that it "found no reason under [its] rules to review the [ALJ's] decision," and it therefore "denied [Plaintiff's] request for review." (R. at 5.) Regardless, even if the Appeals Council were modifying the ALJ's decision, it is permitted to do so by the federal regulations governing social security claims. *See* 20 C.F.R. § 404.979 ("The Appeals Council may affirm, *modify* or reverse the administrative law judge hearing decision . . . .") (emphasis added). Thus, to the extent Plaintiff is asserting error based on the Appeals Council's decision, the Court finds no error.

[4] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1  A federal court may set aside a denial of disability benefits only if that denial is either
2  unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d
3  947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a
4  preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which,
5  considering the record as a whole, a reasonable person might accept as adequate to support
6  a conclusion." *Id.* (quotation omitted).

7  However, the ALJ is responsible for resolving conflicts in testimony, determining
8  credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
9  1995). "When the evidence before the ALJ is subject to more than one rational
10 interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec.*
11 *Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the
12 reviewing court must resolve conflicts in evidence, and if the evidence can support either
13 outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*,
14 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

15 **II.    Analysis**

16 Plaintiff argues that the ALJ's denial of benefits was erroneous because: (A) he
17 improperly discounted the testimony of Dr. Russo, the Court's medical expert (Dkt. # 16 at
18 6-8); (B) he improperly discounted the testimony of Dr. Sopori, an examining physician (*id.*
19 at 8-10); (C) he improperly discounted non-expert letters (*id.* at 10-12); and (D) he "did not
20 include all the relevant factors in his hypotheticals" to the testifying vocational expert (*id.*
21 at 12). The Court will address each of these arguments in turn.

22 **A.    Dr. Russo's Testimony**

23 Plaintiff argues that the ALJ erred in rejecting Dr. Russo's testimony that Plaintiff met
24 Listing 1.08,[5] which governs soft tissue injuries. (*See* Dkt. # 16 at 6-8.) The ALJ discounted
25 Dr. Russo's testimony because he believed that Dr. Russo was confused about the dates

---

[5] The Listing of Impairments is found in Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1. For ease of citation, a listed impairment will be cited hereafter as a "Listing."

- 4 -

between which Plaintiff had to establish disability, as well as the medical evidence applicable within those dates. (*See* R. at 19-20.) The dates at issue are January 27, 1995, the alleged onset date, and December 31, 2000, the DLI. The ALJ specially relied on the fact that Plaintiff had testified that her surgical treatment ended before that eligibility period, yet Dr. Russo testified that Plaintiff "had problems with her wrist during that time *for which she underwent surgery*." (R. at 20 (emphasis added).) The ALJ also pointed out that Dr. Russo had to be repeatedly reminded of the dates at issue, and "appeared to be unprepared for the hearing and confused about the applicability of the claimant's date of last insured." (*Id.*)

The ALJ thus gave specific, legitimate reasons for discounting Dr. Russo's testimony, and those reasons are supported by substantial evidence. While Dr. Russo did testify that Plaintiff met Listing 1.08 (R. at 315), that listing requires that the claimant be under "continuing surgical management," *see* Listing 1.08 ("Soft tissue injury . . . of an upper or lower extremity, trunk, or face and head, *under continuing surgical management* . . . .) (emphasis added). It is undisputed, however, that Plaintiff did not engage in "continuing surgical management" during the eligibility period; in fact, there is no evidence in the record of any medical treatment during that period.[6] (*See* R. at 311.) Thus, Plaintiff could not have met Listing 1.08 after her onset date. Dr. Russo's testimony, therefore, could not have formed the basis of a finding of disability, and the ALJ did not err in rejecting it.

Additionally, there is substantial evidence in the record to support the ALJ's conclusion that Dr. Russo was confused about the dates of eligibility. As the ALJ notes, Dr. Russo had to be repeatedly reminded of the date and effect of the DLI. (*See* R. at 310, 312, 312, 313, 315.) Yet Dr. Russo asked about how Plaintiff's back was doing "now" (R. at

---

[6]Indeed, there are only three records before the Court from the disability period: (1) a letter from the medical reviewer for the Paradise Valley Police Department (Plaintiff's former employer) stating that she could not perform all of her duties as a police officer given the limitations in her right hand (R. at 262-63); (2) a note about medications from May 17, 1999 (R. at 207); and (3) a metabolic profile from the same date (R. at 214). The ALJ agreed with the first record, concluding that Plaintiff could not perform her past work as a police officer, and the latter two documents do not bear on Plaintiff's disability claim.

311), explained that symptomatology was "still present" (R. at 314), and stated that Plaintiff was "still hurting" (R. at 314). As Plaintiff points out, Dr. Russo's ultimate conclusion was that Plaintiff met Listing 1.08 during the eligibility period, but Dr. Russo's continued need to be reminded of the operative dates and their effect, and his repeated proffering of opinions about Plaintiff's medical status outside the eligibility period, could reasonably be interpreted as evidence that he was "unprepared for the hearing" and "confused about the applicability of the claimant's date of last insured" (R. at 20), and thus not credible. Questions of credibility are solely the province of the ALJ, *see Andrews*, 53 F.3d at 1039, and thus the Court finds no error on this point.

Plaintiff further argues that if the ALJ believed Dr. Russo was confused, the ALJ should have "resumed questioning the doctor until any questions the ALJ had with the doctor's testimony were satisfied." (Dkt. # 16 at 8.) Plaintiff bases this argument on the rule that "[t]he ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations omitted). Plaintiff, however, has cited no cases, nor is the Court aware of any, in which the duty to develop the record has required an ALJ to recall a witness who the Court finds not credible because he is "unprepared" and "confused." (R. at 20.) To the contrary, the burden of probing deficiencies in a medical expert's opinion lies with the Plaintiff as part of her general burden to establish an impairment:

> [I]t is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1. If the claimant believes that the medical advisor's opinion as to whether the claimant meets a listed impairment is deficient in supporting explanation we believe that encompassed within this burden is an obligation *by the claimant* to probe the basis for the medical advisor's conclusion at the time of his testimony.

*Torres v. Sec'y of Health and Human Servs.*, 870 F.2d 742, 745 (1st Cir. 1989) (internal citation omitted and emphasis added). The ALJ's decision to reject such testimony, on the other hand, falls squarely within his right to assess the credibility of a witness.

- 6 -

1   However, even if there was a duty to develop the record that applied to Dr. Russo's
2   testimony, the remedy Plaintiff seeks was adequately provided by the ALJ. Plaintiff's
3   argument is not that the ALJ should have sought out further medical evidence informing
4   Plaintiff's disability claim. As Plaintiff conceded at the hearing, no such evidence exists
5   because Plaintiff did not seek treatment during the disability period. (R. at 316 ("[W]e have
6   no records or no record of care. She didn't see anybody, because she believed that she didn't
7   – couldn't get any better . . . ."); *see also* R. at 320-21.) Rather, Plaintiff is arguing that the
8   ALJ should have developed the record with more testimony *from Dr. Russo* once the ALJ
9   determined that Dr. Russo was confused. However, the ALJ made that determination early
10  on in Dr. Russo's testimony, and he repeatedly reminded Dr. Russo of the applicable dates
11  and their effect. Nevertheless, Dr. Russo continued to provide opinions about Plaintiff's
12  condition at the present time, some six years outside of those dates. (*See* R. at 311-16.)
13  Other than to continue repeating himself, there was little more that the ALJ could do. Thus,
14  to the extent that the ALJ had a duty to try to correct Dr. Russo's confusion, the ALJ did just
15  that.[7]

16  Further, the Court notes that "[t]he ALJ may discharge this duty [to develop the
17  record] in several ways, including: subpoenaing the claimant's physicians, submitting
18  questions to the claimant's physicians, *continuing the hearing*, or keeping the record open
19  after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150
20  (emphasis added). Here, the ALJ offered to continue the hearing so that Plaintiff could have
21  another medical expert evaluate Plaintiff's claim. (R. at 316.) Plaintiff declined, choosing
22  instead to rest on the opinion of Dr. Sopori, an examining physician. (*Id.*) Thus, even if the
23  duty applied to this situation, the ALJ discharged that duty.

24  For all these reasons, the ALJ did not err in disregarding Dr. Russo's testimony.

---

26  [7]Indeed, Plaintiff's counsel himself had the opportunity to question Dr. Russo at the
27  hearing, and he asked only one question. (R. at 315.) When the ALJ explained why he was
    rejecting Dr. Russo's opinion and offered Plaintiff the opportunity to get another medical
28  expert, Plaintiff responded: "That's all right." (R. at 316.)

- 7 -

**B.     Dr. Sopori's Opinion**

Plaintiff argues that the ALJ erred in discounting the opinion of Dr. Sopori, an examining physician. (Dkt. # 16 at 8-10.) An ALJ generally should give more weight to the opinion of an examining physician than to opinions of nonexamining physicians. *Andrews*, 53 F.3d at 1041; 20 C.F.R. § 416.927(d)(1). If an examining physician's opinion is not contradicted by the opinion of another doctor, then an ALJ may reject that opinion only for clear and convincing reasons supported by substantial evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). If the examining physician's opinion is contradicted by the opinion of another doctor, an ALJ may reject the opinion only by providing specific, legitimate reasons that are supported by substantial evidence. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, no other doctor explicitly testified that Plaintiff was able to work, and thus the Court will apply the clear and convincing standard. The ALJ discounted Dr. Sopori's opinion, offered in early 2007 through a one-page statement (*see* R. at 291), because it was based on "medical evidence relating to the period after December 31, 2000," which is "not applicable to this case." (R. at 21.) This reason is clear, convincing, and supported by substantial evidence. Dr. Sopori's assessment is of Plaintiff's current complaints, her current limitations, and her current diagnosis. (*See* R. at 291.) Dr. Sopori's opinion, therefore, is based on medical evidence outside of the eligibility period (which ended on December 31, 2000, some six years prior). The opinion does contain a retroactive assessment in the conclusions section, providing that "[s]ince the patient was injured both in 1990 and 1993, she suffers pain which has worsened over time. She has been unable to perform any work and is incapacitated. She has not been employable since 1995." (*Id.*) That opinion is based, however, on conclusions about Plaintiff's *present* capabilities, for the conclusions section provides that Plaintiff "*is* unable" to do certain things, that she "*needs* frequent change of position," and that she "*has* severe pain in the neck, upper and lower back." (*Id.* (emphases added).) Dr. Sopori cites to no evidence from the eligibility period establishing that these symptoms existed between 1995 and 2000 – and as explained above, no such evidence exists

- 8 -

1   in the record. Because Dr. Sopori provided an opinion based on a diagnosis six years outside
2   the eligibility period, and because there is no medical evidence from that period to
3   corroborate her opinion, the ALJ was within his rights to reject the opinion. *See Magallanes*
4   *v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989) (finding that an ALJ did not err in discounting
5   a doctor's retrospective opinion about a disability onset date in light of the fact that the
6   doctor did not see the claimant until two years later and there was no other objective medical
7   evidence of disability during the time alleged); *Vincent ex rel. Vincent v. Heckler*, 739 F.2d
8   1393, 1395 (9th Cir. 1984) (holding that an ALJ was entitled to discount a psychiatric
9   diagnosis because it was provided after-the-fact). Thus, the Court finds no error on this
10  point.[8]

### C.  Non-Expert Letters

Plaintiff takes issue with the minimal amount of discussion the ALJ employed in evaluating several non-expert letters submitted by her family, friends, and coworkers, arguing that "[t]he only recognition of their existence comes from [a] string citation." (Dkt. # 16 at 10.) Plaintiff argues that if the ALJ wished to discount these letters, he was required to provide a more thorough discussion. It is undisputed that:

> In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability

---

[8] Plaintiff also states that "all of the[] records" support a finding of disability, and thus that the ALJ's decision should be overturned. (Dkt. # 16 at 12.) Such a broad, unsupported assertion of error is insufficient to present a claim before this Court, as it is unaccompanied by sufficiently-developed argument, legal authority, or citation to the record. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (holding that a party's argument was waived because the party simply made a "bold assertion" of error, and explaining that "we review only issues which are argued *specifically and distinctly*") (emphasis added); *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding that an assertion of error was "too undeveloped to be capable of assessment" and therefore waived). Thus, Plaintiff's argument is waived. Regardless, the Court has considered all of the evidence in the record and concludes that the ALJ's rationale for denying benefits (including the absence of medical evidence during the eligibility period, the absence of treatment during that period, Plaintiff's ability to perform a range of activities, and the testimony of the vocational expert) is legally appropriate and supported by substantial evidence.

> to work. Indeed, lay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment. Consequently, if the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal citations and quotations omitted).

In this case, however, the ALJ did not discount the letters – they are, in fact, wholly consonant with the ALJ's conclusion. The letters state, in varying terms, that Plaintiff was unable to continue working as a police officer after her injuries in 1990 and 1993 and that Plaintiff now has difficulty doing many of the tasks that she did before. (*See* R. at 158-67, 261.) The ALJ agreed that Plaintiff could not engage in her past work as a police officer (R. at 21), and further agreed that she suffered from functional limitations as a result of her injury (R. at 22). The ALJ found, however, that such limitations did not preclude *all* work, and the letters do not contradict that conclusion. Because the ALJ was not discounting the testimony advanced in these letters, he was not required to provide reasons for discounting the testimony that are germane as to each witness. Thus, the Court finds no error.[9]

### D. Hypotheticals Posed to the Vocational Expert

Plaintiff argues that the vocational expert's testimony "is defective as the ALJ did not include all the relevant factors in his hypotheticals." (Dkt. # 16 at 12.) Plaintiff is drawing on the rule that if an ALJ's hypotheticals do not properly reflect a claimant's limitations, then any expert testimony that results from those hypotheticals lacks sufficient evidentiary value to support a finding that the claimant can perform jobs in the national economy. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

First of all, the Court does not believe that Plaintiff has sufficiently developed such an argument to present a claim for review before this Court. Plaintiff's one paragraph on the

---

[9] In the same way, even if the ALJ erred by not discussing the letters further, such error would be harmless because the ALJ agreed with the letters. *See Batson*, 359 F.3d at 1197 (explaining that an ALJ's error is harmless if it does not affect his ultimate conclusion).

- 10 -

1 issue, which is entirely conclusory and supported by only a single legal citation (without a
2 pincite), fails to adequately explain *which* specific evidence should have been included and
3 *why* the failure to include that evidence constitutes error. *See Indep. Towers*, 350 F.3d at
4 929-30; *Hibbs*, 273 F.3d at 873 n.34.

5 Regardless, to the extent the Court can construct an argument about the general
6 categories Plaintiff offers as examples of what should have been included in the hypotheticals
7 (Plaintiff's "limitations in daily activities," the contents of "the non-expert or lay witness
8 letters," the "pain Plaintiff testified to," and Plaintiff's "napping"), Plaintiff's argument is
9 still unpersuasive. Plaintiff's daily activities and subjective limitations were thoroughly
10 discussed by the vocational expert, who actually questioned Plaintiff on those issues in the
11 course of answering the ALJ's hypotheticals. (*See* R. at 324-30.) Moreover, the vocational
12 expert was present during Plaintiff's testimony, in which he heard all of the points at issue
13 here,[10] and it is evident from the vocational expert's testimony that he was incorporating
14 Plaintiff's description of her limitations in answering whether or not a person in Plaintiff's
15 situation could perform other jobs in the national or local economy. (*See id.*) Indeed, the
16 vocational expert went so far as to ask Plaintiff whether the way he was laying out her
17 impairments was accurate, and she agreed that it was. (R. at 328.) Thus, Plaintiff is incorrect
18 in asserting that there were deficiencies in the hypothetical testimony given by the vocational
19 expert.[11] Plaintiff's argument therefore lacks merit.

---

[10]The content of the letters submitted by Plaintiff's family and friends was not raised with the vocational expert, but, even assuming that an ALJ is required to incorporate such lay testimony in a hypothetical, any error would be harmless because, as explained above, the ALJ agreed with those letters. *See Batson*, 359 F.3d at 1197.

[11]The Court also notes that the reference to "napping" alleged here is akin to a passing mention that does not require inclusion in a hypothetical. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that an ALJ did not err in failing to include alleged side effects of medications, including "dozing off," in a hypothetical to a vocational expert because there were only "passing mentions of the side effects" and "there was no evidence of side effects severe enough to interfere with [the claimant's] ability to work"); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) ("[S]ince there are only passing references in

- 11 -

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. # 14) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Dkt. # 17) is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to **TERMINATE** this action.

**DATED** this 10th day of December, 2008.

G. Murray Snow
United States District Judge

---

the record to intermittent difficulties such as numbness in the fingers, there is substantial evidence to support excluding these considerations from the hypothetical.").

- 12 -